# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-543V
UNPUBLISHED

| | |
|---|---|
| ANDREA COLI,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: February 4, 2022<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Meningococcal Vaccine; Tetanus Diphtheria acellular Pertussis (Tdap) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA,* for Petitioner.

*Amanda Pasciuto, U.S. Department of Justice, Washington, DC,* for Respondent.

### DECISION AWARDING DAMAGES[1]

On May 1, 2020, Andrea Coli filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a Table Injury – a Shoulder Injury Related to Vaccine Administration ("SIRVA") – as a result of her July 10, 2019 receipt of the meningococcal and tetanus diphtheria acellular pertussis (Tdap) vaccines. *See* Petition,

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although Respondent conceded entitlement, the parties could not agree on damages, so the disputed issues were submitted for resolution at an SPU Motions Day.

For the reasons described below, and after holding a brief hearing in this matter, I find that Petitioner is entitled to an award of damages in the amount of **$70,000.00** representing her actual pain and suffering.

## I.     Procedural Overview

As noted above, the case was initiated in May 2020. On July 26, 2021, Respondent filed a Rule 4(c) Report in which he conceded that Petitioner was entitled to compensation in this case. ECF No. 24. Accordingly, on July 28, 2021, a ruling on entitlement issued finding Petitioner entitled to compensation for her SIRVA injury. ECF No. 26.

As the parties advised they were unable to informally resolve the issue of damages, a briefing schedule was set in the Damages Order issued on July 28, 2022. ECF No. 27. Petitioner filed her brief on September 13, 2021, requesting that I award her $90,000.00 in compensation for her past/actual pain and suffering. ECF No. 30 at 23. Conversely, in a brief filed on October 28, 2021, Respondent argued that Petitioner should be awarded only $45,000.00 for past pain and suffering. ECF No. 31 at 13. Petitioner filed a Reply brief on November 12, 2021. ECF No. 33.

In December of this year, I informed the parties that this case was appropriate for an expedited hearing and ruling via my "Motions Day" practice, at which time I would decide the disputed damages issues based on all evidence filed to date plus whatever oral argument they wanted to make. ECF No. 34. The parties agreed, and an expedited hearing took place on January 28, 2021. Minute Entry, dated January 28, 2021.[3] I orally ruled on Petitioner's damages at that time, and this Decision memorializes that determination.

## II.    Pain and Suffering

### A. Legal Standard and Prior SIRVA Pain and Suffering Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully

---

[3] Alex Pop appeared on behalf of Petitioner, and Amanda Pasciuto appeared on behalf of Respondent. The hearing was officially recorded by a court reporter, although a transcript of the January 28, 2022 Hearing in this case was not filed as of the date of this Decision, my oral ruling is incorporated by reference herein.

2

adopt and hereby incorporate my prior discussion in Sections II and III of *Winkle v. Sec'y Health & Hum. Servs.*, No. 20-0485V, 2022 WL 221643, at *2-4 (Fed. Cl. Spec. Mstr. Jan. 11, 2022).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

### B. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Petitioner's awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: all medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on January 28, 2022. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

I find that $70,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering. There are several related bases for my decision.

The record establishes that Petitioner's shoulder pain was initially fairly severe, prompting her to contact her primary care provider – Kaiser Permanente – for a telephone consultation only nine days following her vaccination on July 19, 2019. Ex. 3 at 162-170. Thereafter, however, she underwent relatively conservative treatment (including in-person and remote or home physical therapy, an MRI scan[5], and the use of various non-

---

[4] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[5] Petitioner underwent an MRI on October 18, 2019, the impression was as follows: "1. No evidence of edema or fluid collections within the deltoid muscle. 2. Query subacromial-subdeltoid bursitis. 3. Low-grade partial thickness bursal sided fraying of the supraspinatus and infraspinatus tendons near the footprint with minimal associated muscle atrophy." Ex. 3 at 230.

3

steroidal anti-inflammatory drugs or NSAIDs to manage her pain) over a 14-month period.[6] Thus, Petitioner's SIRVA was on its face less severe in many respects than other kinds of claims often presented in the Program.

Petitioner's medical records confirm that she suffered a mild to moderately severe injury. On October 31, 2019, Petitioner was seen by Jeffrey Wise, MD, who specializes in sports medicine. Dr. Wise reviewed Petitioner's MRI and diagnosed her with shoulder pain and impingement syndrome. Ex. 3 at 259. Dr Wise offered to treat Petitioner with a steroid injection which she declined in favor of using NSAIDS, rest, ice, and physical therapy to treat her injury. *Id.* On February 27, 2020, her physical therapist, Robert Huey, DPT, found that her strength was improved, but there was a decrease in her range of motion and he "[s]uspect[ed] some frozen shoulder." Ex. 4 at 39. In follow-up, Petitioner messaged Dr. Wise, on March 1, 2020, and he advised that a frozen shoulder could take one to two years to return to normal and encouraged her to "push the motion to speed that along." Ex. 4 at 45. Dr. Wise did not, however, evaluate Petitioner's shoulder at that time and did not formally diagnosis Petitioner with frozen shoulder. Dr. Wise again offered to administer a steroid injection, which he indicated might further speed up her recovery, but he acknowledged Petitioner was "understandably" hesitant to receive an injection. *Id.*

Petitioner completed approximately seven in-person physical therapy sessions between October 2019 and March 2020 when in-person appointments were suspended due to the COVID-19 Pandemic. Ex. 4 at 51. However, Petitioner's shoulder injury was significant enough to prompt her to engage in an aggressive home physical therapy practice through an online patient portal as directed by physical therapist, Dr. Huey. Ex. 3 at 207; Ex. 4 at 51. Petitioner completed approximately 121 remote sessions between November 2019 and September 2020. Ex. 9. Critically, this allowed Petitioner to continue to treat her injury after Kaiser discontinued in-person physical therapy in March 2020, and I credit the number of sessions she participated in despite Respondent's arguments that they were qualitatively different from PT with a professional treater.

By September 2020, Petitioner's injury appears to have significantly improved. On September 14, 2020, Petitioner messaged Dr. Huey to inquire if she should modify her shoulder exercises, noting her "range of motion is still limited, although it has been slowly improving." Ex. 6 at 13. Dr. Huey responded providing additional exercise guidance, and also advising that Kaiser was beginning to see in-person patients, offering to set-up an initial video visit and to begin the process to obtain a new referral for physical therapy. *Id.*

---

[6] Petitioner's pain levels fluctuated from low to high, as follows: 4-8/10 on July 19, 2019 (Ex. 3 at 169); 4/10 with normal movement, and 8/10 with jerking on September 25, 2019 (Ex. 3 at 182); 0/10 currently, and 8-9/10 at worst on October 11, 2019 (Ex. 3 at 201); 5/10 on October 31, 2019 (Ex. 3 at 258); and 8/10 on January 17, 2020 (Ex. 4 at 16).

4

at 12. Petitioner, however, did not schedule a video or in-person visit. Petitioner completed her last remote or home physical therapy session on September 5, 2020. Ex. 9 at 5. While her overall treatment course was not short, its duration was not significant either, especially given the conservative interventions she experienced.

In making my determination, I have also fully considered the sworn affidavits, of both Petitioner and her husband, which describe the pain experienced by Petitioner over the course of her injury, as well as the limitations in her exercise of daily functions (such as dressing, sleeping, showering and carrying bags) and professional activities. Ex. 7 at ¶ 4; Ex. 8 at ¶¶ 12, 14. Significantly, Petitioner was unable to engage in sporting activities with her children such as tennis, volleyball, and bicycle riding. Ex. 7 at ¶ 8; Ex. 8 at ¶ 13. Petitioner states that she suffered from her injury for over two years and is now 90% improved. Ex. 7 at ¶ 10.

Based upon all of the above, Petitioner has demonstrated entitlement to an award for pain and suffering exceeding what has been recommended by Respondent. Respondent argues Petitioner should be awarded only $55,000.00[7] for past pain and suffering, referencing *Rayborn v. Sec'y of Health & Hum. Servs.*, No. 18-0226V, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020) (awarding $55,000.00 for actual pain and suffering).[8] ECF No. 31 at 13. While *Rayborn* represents a reasonable comparable (and I commend Respondent for providing comparables in this case rather than simply an assertion that the sum proposed is correct – as often is argued in these matters), I find the facts of Petitioner's case to be more severe. In particular, I note that Petitioner underwent considerably more physical therapy, or sessions comparable to it (128 in total), than the petitioner in *Rayborn* who underwent only 14 occupational therapy sessions. *Id.* at *11. Additionally, the duration of Petitioner's injury and treatment course exceeds what the *Rayborn* petitioner experienced (only nine months). *Id.*

However, the $90,000.00 sum requested by Petitioner is itself higher than is supported by the facts of this case. Petitioner maintains this case is comparable, but more severe, than several cases awarding $68,000.00 to $85,000.00 in pain and suffering, citing the following decisions: *Tjaden v. Sec'y of Health & Hum. Servs.*, No. 19-0419V,

---

[7] I note that at the January 28, 2022 expedited hearing in this case, Respondent raised his recommended award from $45,000.00 to $55,000.00 in light of Petitioner's documentation of her on-lime home therapy (Ex. 9) filed subsequent to Respondent's brief.

[8] Respondent also cited, in passing, the following cases to support his proposed award: *Norton v. Sec'y of Health & Hum. Servs.*, No. 19-1432V, 2021 WL 4805231 (Fed. Cl. Spec. Mstr. Sept. 14, 2021) (awarding $55,000.00 for actual pain and suffering); *Roth v. Sec'y of Health & Hum. Servs.*, No. 19-0944V, 2021 WL 4469920 (Fed. Cl. Spec. Mstr. Aug. 31, 2021) (awarding $58,000.00 for actual pain and suffering); and *Welch v. Sec'y of Health & Hum. Servs.*, No. 18-0660V, 2021 WL 4612654 (Fed. Cl. Spec. Mstr. Sept. 2, 2021) (awarding $55,000.00 for actual pain and suffering). ECF No. 31 at 13.

2021 WL 837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021) (awarding $68,000 for actual pain and suffering); *Decoretz v. Sec'y of Health & Hum. Servs.*, No. 19-0391V, 2021 WL 2346468 (Fed. Cl. Spec. Mstr. May 7, 2021) (awarding $75,000.00 for actual pain and suffering); and *Dirksen v. Sec'y Health & Hum. Servs.*, No. 16-1461V, 2018 WL 6293201 (Fed. Cl. Spec. Mstr. Oct. 18, 2018) (awarding $85,000.00 for actual pain and suffering). ECF No. 30). I find that the *Tjaden* and *Decoretz* cases represent good comparables, despite some individual distinctions, and that an appropriate award for pain and suffering falls between what was awarded the petitioners in those cases. Conversely, I find the *Dirksen* petitioner, whose shoulder injury persisted for more than four years, suffered a more severe injury than Petitioner.

Ultimately, an award of $70,000.00 is most appropriate for the mild to moderate SIRVA injury suffered by Petitioner, for the reasons discussed above.

### III.    Conclusion

Based on my consideration of the complete record as a whole and for the reasons discussed in my oral ruling, I find that $70,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering. [9]

Accordingly, I award Petitioner a lump sum payment of $70,000.00 in the form of a check payable to Petitioner. This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this decision. [10]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[9] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.